SHIELD v. LONE STAR LIFE INS. CO.
(No. 7889.)

(Court of Civil Appeals of Texas. Dallas. Feb. 23, 1918. Rehearing Denied March 30, 1918.)

1. CORPORATIONS ⟊99(1)—STOCK SUBSCRIPTION—PAYMENT—NOTE.

Under Const. art. 12, § 6, providing that no corporation shall issue stock or bonds except for money paid, labor done, or property actually received, there could be no recovery by a corporation on a note given for stock issued, though collateral security was deposited, since the transaction was illegal.

2. CORPORATIONS ⟊198—VOTING STOCK.

In corporation's action to recover on note given for stock issued, where defendant set up abandonment of business by sale of the assets, he could testify that one holding his general proxy was instructed to vote against the sale.

3. CORPORATIONS ⟊198—STOCK—PROXY.

A general proxy does not authorize the holder to vote for sale of the entire assets.

4. CORPORATIONS ⟊92—NOTES FOR STOCK—FAILURE OF CONSIDERATION.

Where a corporation for stock in which defendant gave his note sold its entire assets and abandoned business, the note was not collectable, since the consideration failed.

Appeal from District Court, Dallas County; E. B. Muse, Judge.

Action by the Lone Star Life Insurance Company against L. L. Shield. Judgment for plaintiff, and defendant appeals. Reversed and rendered.

Snodgrass, Dibrell & Snodgrass, of Coleman, for appellant. Coke & Coke, of Dallas, for appellee.

RAINEY, C. J. Appellee sued appellant to recover on a note for $2,000, with interest and attorney's fees executed by appellant November 30, 1910.

Appellant L. L. Shield filed his first amended original answer December 4, 1916, in which he urges general exceptions and general denials and special defenses, setting up: First, that the note was void because taken in payment of stock issued and delivered by appellee to appellant; second, that appellant subscribed to stock in plaintiff company in consideration of the note upon certain conditions which had not been complied with; third, that appellee had dissolved its corporate existence without the consent of appellant, and abandoned the corporate enterprise, thereby releasing appellant from liability; and, fourth, that the note sued upon was secured by reason of certain false and fraudulent representations on the part of appellee and its agents. On December 8, 1916, appellee filed its supplemental petition in reply to appellant's amended answer, setting up general and special demurrers, general denial and estoppel against urging false representations, and the statute of limitation of four years. Appellants filed first supplemental answer December 8, 1916, in reply to appellee's supplemental petition, consisting of general denial, and alleging that, if the agents of appellee exceeded their authority, the acts and representations were adopted and ratified by appellee with full knowledge thereof. The case was tried before a jury December 11, 1916. Judgment was rendered upon said note sued on in favor of appellee against appellant in the sum of $2,532.95, principal and interest, attorney fees, and all costs. Appellant requested in writing the submission of said cause upon special issues, and presented with said written request 25 special issues, separately requesting that each be presented

to the jury. The request was overruled, and the court refused to submit either of said special issues, and appellant duly excepted to the action of the court in refusing to submit the cause upon special issues, and to the action of the court in refusing to submit each of the special issues. The court gave the jury peremptory instruction to find for appellee for the full amount sued for, principal, interest, and attorney fees, from which judgment an appeal was duly perfected.

Appellee is a Texas corporation, legally organized in March, 1910. Prior thereto, on February 3, 1910, L. H. Morgan & Co., acting for appellee, entered into a contract with appellant, whereby appellant subscribed to 10 shares of the capital stock of appellee in consideration of which stock appellant executed his note for $500, payable to L. H. Morgan & Co., and appellant's note for $1,500, payable to appellee. The last note was payable in money or in securities satisfactory to the insurance department of Texas. "The contract further provided that no condition, representations, or agreements other than those printed in it should be binding on Morgan & Co. or the Lone Star Life Insurance Company. Under date of February 2, 1910, one Harkrider, an agent of Morgan & Co. in the making of aforesaid contract, wrote appellant: 'Confirming my conversation with you this day in reference to the purchase of 10 shares in the Lone Star Life Ins. Co. I wish to say that your bank shall be made depository for all sales of insurance made in your section and condition[ed] on your becoming a director of said company. In payment of said stock I agree to accept your note payable Oct. 1st, 1910, for $500.00 as first payment and balance $1,500.00 to be secured satisfactory to Ins. Dept. of Texas for five years at 5 per cent. interest.'" Other promises and representations were testified to by appellant.

A controversy between appellant and appellee arose about the terms of the contract in regard to the issuance of stock, and much correspondence was indulged in between the parties, lasting from February 2, 1910, to September 28, 1910, when appellee made appellant the following proposition through letter, viz.:

"September 28, 1910.

"Mr. L. Shield, Santa Anna, Texas—Dear Sir: Since you were here we have tried to get enough of the executive committee together to act upon your proposition, but have been unable to get a quorum. The company will, however, be willing to take your personal note for $2,000.00 to run for five years at five per cent. interest per annum, payable annually, same to be secured by vendor lien notes in accordance with the requirements of the insurance department, and issue you ten full shares of the capital stock of the company and pay off the $500.00 note, provided there is no past due interest or protest fees or attorneys fees due on same. The writer believes you will never regret taking up our offer to assist you in closing up your subscription in the manner outlined above and is of the opinion that as a director and stockholder

in the company, our relations could and would be made mutually pleasant and profitable. With kind personal regards, I am,

"Yours very truly,
"S. W. Johnson, President."

On October 1, 1910, appellant replied to this letter of September 28th, accepting the proposition in the following terms:

"I will accept the terms offered by you in yours of Sept. 28th. * * * You will please send me a note for signature as per terms of settlement set forth in yours of Sept. 28, 1910. You will please see the Commonwealth National Bank and say to them that their matter will be adjusted promptly."

On October 5, 1910, appellant wrote as follows:

"Oct. 5, 1910.

"Lone Star Life Ins. Co., Dallas, Texas—Dear Sirs: Inclosed herewith please find note and collateral as per our agreement. Also, certificate of the valuation of the land. This land is located about 3½ miles from Santa Anna and about five miles from Coleman City. It is reasonably well improved and is absolutely worth the amount mentioned by the appraisers. I will collect the interest on these notes when due and ask you to credit them with same. I will be glad to have you go at once and take up the five hundred dollar note at the Commonwealth National Bank. You need not delay any matters in this for if the collateral is not satisfactory I will make it satisfactory. In regard to the abstract, I had this pasture cut up and platted and recorded the plat in my own name. Hence there could be no abstract of title, this being the original G. W. Mahoney pasture. There was at one time over twenty thousand acres. Colonel Mahoney had it all abstracted and the abstract is on record. Hoping this information is satisfactory, I beg to remain,

"Yours truly,            L. L. Shield.
"P. S. Please advise date of next directors' meeting and I will try to be present.

"Received above described notes from Lone Star Life Insurance Company, this 30th day of November, 1910.            L. L. Shield."

On October 7, 1910, appellee acknowledged the receipt of the $2,000 note, and three vendor's lien notes of $695 each, requesting an abstract of title. Thereafter, on November 30, 1910, appellant appeared in Dallas, and the old note thus executed, and the vendor's lien notes accompanying same were surrendered, and appellant executed a new note bearing said date, and delivered to appellee as collateral security other vendor's lien notes more acceptable to appellee, and at the time of the execution and delivery of this note and collateral vendor's lien notes appellee issued and delivered to appellant 10 shares of the capital stock of the company, Lone Star Life Insurance Company, as a consideration for said $2,000 note, and paid off the previous note executed by appellant for $500. Appellant testifies with reference to this transaction:

"When I executed this note, he (referring to Dr. S. W. Johnson, president of the company) agreed to turn over to me stock paid up, and when I executed the note he issued the stock and delivered it to me. I think this is the stock that he issued original stock certificate No. 117, dated November 30, 1910, to L. L. Shield for 10 shares. This is all the stock that I ever received. * * * All the consideration that I received for the note I executed (referring to the

note sued upon) was 10 shares of stock in the company, and they were going to take up the $500 note I had already executed."

The original certificate of these 10 shares was in open court tendered to appellee, and acceptance of same refused. The note sued on and executed by appellant on November 30, 1910, was for $2,000 payable five years after date thereof to the order of appellee in Dallas, Tex., with interest at the rate of 5 per cent. per annum from October 1, 1910, until paid, payable annually on November 30th of each year. At the time said note was given to appellee it issued its certificate of 10 shares of stock No. 117, and delivered same to appellant. No money or property was paid therefor by appellee. Appellant was elected a director in said company, and attended several meetings of the board of directors until March 11, 1913, when he was not re-elected. Appellee was and is a solvent corporation, and owes no debts. On March 31, 1914, the stockholders of said company, without the consent of appellant, sold all the assets of the company, and permanently abandoned the corporate enterprise. Appellee never deposited any money in either bank of appellant.

[1] We are of the opinion that the trial court erred in instructing a verdict for appellee, for the evidence adduced by both parties shows that the note executed by appellant to appellee was in payment for shares of the capital stock in appellee company, which made the transaction illegal. Article 12, § 6, Const.; Irr. Co. v. Deutschmann, 102 Tex. 207, 105 S. W. 486, 114 S. W. 1174; McCarthy v. Texas Loan & Guaranty Co., 142 S. W. 96; Rep. Trust Co. v. Taylor, 184 S. W. 772; Mason v. Bank, 156 S. W. 366; Sturdevant v. Falvey, 176 S. W. 908; Kanaman v. Gahagan, 185 S. W. 619.

Appellee insists, in effect, that the stock delivered to appellant by appellee did not belong to it, but was the property of E. M. Reardon, and such sale was not within the prohibition of article 12, § 6, of Texas Constitution.

The evidence shows that the officers of the company on checking up on September 28, 1910, found that all the stock had been paid for except 433 shares, and in order to get a permit to do business they paid in $64,955 for said stock to the company, and it issued certificates of stock numbered from 105 to 115 to E. M. Reardon, trustee. Part of this stock had been subscribed for, but not paid for, and a permit to do business was obtained. When appellant executed the note sued on the company delivered him certificate for 10 shares of stock No. 117. Certificate No. 113 for 10 shares was canceled and reissued to appellant as No. 117. The original stub book of certificates had on it—

"the number of the original certificate 11e, number of original shares 10, number of shares transferred 10. Received certificate No. 117

for ten shares of stock, this, the 30th day of November 1910. [Signed] L. L. Shield."

Certificate No. 117 issued to appellant is a direct certificate to L. L. Shield. There is nothing on its face showing that Reardon ever had connection therewith. No transfer is shown to have been made by Reardon, and appellant testified that when delivered to him he knew nothing about Reardon's connection therewith; that he never had any contract to buy from him, or authorized any one to do so, but that said note was executed with reference to the negotiations thereto had with the company. Reardon was subsequently paid the value of his stock, No. 113, by the appellee in March, 1917. The appellee sold its stock to appellant on time as its own, and we cannot now say under the testimony that it was acting for another in making the sale.

Appellant also claims that the appellee sold all the assets of the concern and stopped business altogether, without his consent, while it was solvent and owed no liabilities. Appellee claims that Henry Hamilton held appellant's proxy, and at the stockholders' meeting at which it was decided to sell the business of the concern his proxy was voted for the sale.

[2, 3] While appellant offered to testify that Hamilton was his general proxy, he also testified that he had given him instructions to vote against a sale. This testimony was objected to and excluded. This was error. However, appellant did testify that he was opposed to the sale, and we are of the opinion that under the authorities a general proxy will not authorize the holder to vote for the sale and disposition of the entire assets of the corporation and for the abandonment of the business enterprise. Cook on Corporations, vol. 2 (6th Ed.) §§ 610, 670; Cyc. vol. 10, 408.

[4] It being shown that said corporation was never insolvent and owed no liabilities, but had sold its entire assets and abandoned business, the consideration for said note has failed; therefore it is not collectable. Thompson on Corporations (2d Ed.) vol. 1, says:

"It may be asserted, as the first rule generally, that where the corporate enterprise is completely abandoned without any effort to execute or carry out corporate purposes and no rights of creditors are involved, the subscriber will be released. Thus, the Supreme Court of Kentucky, say: 'The defendant should only be absolved from liability for the payment of his stock by alleging and proving a final abandonment of the work by the company, and also that its payment was not necessary for the purpose of satisfying any existing demand against the corporation.'"

For the reason that the said note was given for stock delivered and no money or property paid, the judgment is reversed, and here rendered for appellant.

Reversed and rendered.