Lillie S. Mayer,
Plaintiff,

*vs.*

Kenneth S. Adams, H. M. Addinsell, F. W. Begrisch, T. S. Gay,
P. J. Parker, Paul Endacott, Rayburn L. Foster, A. M.
Hughes, J. L. Johnston, W. W. Keeler, H. E. Koopman,
Stanley Learned, C. R. Musgrave, Phillip R. Phillips,
W. C. Smoot, B. F. Stradley, R. W. Thomas, G. P. Dimit,
Don Emery, G. G. Oberfell, F. E. Rice, Charles A. Lemp,
Eugene E. du Pont, Phillips Petroleum Company, Kenneth S. Adams, Jr., and Ada Oil Company, Inc.,
Defendants.

*Supreme Court On Appeal, April 15, 1958.*

*Rehearing Denied May 15, 1958.*

*Clarence W. Taylor* and *Steward Lynch,* of Hastings, Lynch & Taylor, of Wilmington, for appellant.

*Robert H. Richards, Jr.,* and *Stephen E. Hamilton, Jr.,* of Richards, Layton & Finger, of Wilmington, for appearing appellees other than Ada Oil Company, Inc.

*Edwin D. Steel, Jr.* and *Andrew B. Kirkpatrick Jr.,* of Morris, Steel, Nichols & Arsht, of Wilmington, for appellee Ada Oil Company, Inc.

SOUTHERLAND, C. J., TERRY, President Judge, and CAREY, Judge, sitting.

SOUTHERLAND, Chief Justice: The case concerns Rule 23(b) of the Rules of the Court of Chancery, *Del.C.Ann.* relating to stockholders' derivative suits. The second sentence of paragraph (b) provides:

"The complaint shall also set forth with particularity the efforts of the plaintiff to secure from the managing directors or trustees and, if necessary, from the shareholders such action as he desires, and the reasons for his failure to obtain such action or the reasons for not making such effort."

The question is:

Under what circumstance is a preliminary demand on shareholders necessary?

Plaintiff is a stockholder of the defendant Phillips Petroleum Company. She brought an action to redress alleged frauds and wrongs committed by the defendant directors upon the corporation. They concern dealings between Phillips and defendant Ada Oil Company, in which one of the defendant directors is alleged to have a majority stock interest.

The amended complaint set forth reasons why demand on the directors for action would be futile and the sufficiency of these reasons was not challenged. It also set forth reasons seeking to excuse failure to demand stockholder action. The principal reasons were (1) that fraud was charged, which no majority of stockholders could ratify; and (2) that to require a minority stockholder to circularize more than 100,000 stockholders—in effect, to engage a proxy fight with the management—would be an intolerably oppressive and unreasonable rule, and in any event would be a futile proceeding. All defendants moved to dismiss on the ground that the reasons set forth were insufficient in law to excuse such failure.

The Vice Chancellor was of opinion that, notwithstanding these allegations, demand on stockholders would not necessarily have been futile. He accordingly dismissed the complaint. Plaintiff appeals.

In the view we take of the case, the issue between the litigants narrows itself to this:

If the ground of the derivative suit is fraud, is demand for stockholder action necessary under the rule?

When it is said that a demand on stockholders is necessary in a case involving fraud, the inquiry naturally arises: demand to do what?

Let us suppose that the objecting stockholder submits to a stockholders' meeting a proposal that a suit be brought to redress alleged wrongs. He may do so either by attending the meeting, or, if the regulations of the Securities and Exchange Commission are applicable, by requiring the management to mail copies of the proposal to the other stockholders. (He is limited to 100 words of explanation. Rule X-14A-8b.) Let us further suppose—a result quite unlikely—that the stockholders approve the resolution. What is accomplished by such approval? The stockholder is about to file his suit. What additional force is given to the suit by the approval?

Let us suppose again that the proposal is disapproved by the majority stockholders—as common knowledge tells us, it will ordinarily be. What of it? They cannot ratify the alleged fraud. *Keenan v. Eshleman,* 23 *Del.Ch.* 234, 2 *A.2d* 904, 120 *A.L.R.* 227; *Loft, Inc., v. Guth,* 23 *Del.Ch.* 138, 2 *A.2d* 225. The stockholder files his suit, which proceeds notwithstanding the disapproval.

If the foregoing is a correct analysis of the matter, it follows that the whole process of stockholder demand in a case of alleged fraud is

futile and avails nothing. This appears to be the view expressed by Chancellor Seitz in *Campbell v. Loew's Inc.*, 36 *Del.Ch.* 533, 134 *A.2d* 565, 567. His opinion was filed shortly before the date of the decision of the Vice Chancellor in the instant case, and had, perhaps, not been brought to the latter's attention, since the opinion below does not comment upon it. In the Campbell case demand on stockholders was excused on two grounds, first, because the stockholders could not act in time to prevent the threatened injury, and second, because "absent unanimous approval the stockholders could not ratify" illegal expenditures of corporate funds. The Chancellor said:

> "I therefore conclude from the pleadings that a demand upon the stockholders was not necessary under the facts alleged, but in any event a demand here would have been futile under the circumstances. A demand upon the stockholders implies that legally they can do something about it. Where they cannot, the Rule does not contemplate that such useless act must nevertheless be performed."

The defendants vigorously assail this view of the matter. They say that the rule requires demand for action to be made upon the stockholders in all cases in which the board of directors is disqualified (as here) to pass upon the matter of bringing suit, because in such a case the power to determine the question of policy passes to the body of the stockholders. The stockholders may determine, when the matter is presented to them, upon any one of a number of courses. Thus, defendants say, they may authorize plaintiff's suit; they may determine to file the suit collectively—"take it over", so to speak; they may take other remedial action; they may remove the directors; and, finally, they may decide that the suit has no merit, or, as a matter of corporate policy, that it should not in any event be brought.

These answers do not impress us. As we have said, why is it "necessary" to have stockholders' approval of plaintiff's suit? Defendants say: to comply with the rule. This is arguing in a circle. The question is, does the rule make it necessary?

Again, what is gained (except, perhaps, "moral" support) by having the suit brought by a group of stockholders, however large, rather than by a single individual? A more serious objection to this suggestion is that under Delaware law the directors manage the corporation—not the stockholders. It is certainly gravely to be doubted whether the majority stockholders, as such, may take over the duties of the directors in respect of litigation. Cf. *Abercrombie v. Davies*, 35 *Del.Ch.* 599, 123 *A.2d* 893.

The suggestion that the directors could be removed is a suggestion that the objecting stockholder could engage in a proxy fight with the management. Of all defendants' suggestions, this seems to us to be the most unrealistic. How often is a minority stockholder equipped to take on such a formidable task? And why should a proxy fight be made a condition precedent to a minority stockholder's suit to redress an alleged fraud?

Finally it is suggested that the stockholders may (1) determine that the suit has no merit, or (2) that it is not a good policy to press it.

As to the first suggestion, we think it clear that in the ordinary case the stockholders in meeting could not satisfactorily determine the probable merits of a minority stockholder's suit without a reasonably complete presentation and consideration of evidentiary facts. Perhaps some very simple cases might be handled in another manner, but they must be few. A stockholders' meeting is not an appropriate forum for such a proceeding.

The second suggestion, that the stockholders may, as a matter of policy, determine that the claim shall not be enforced and bind the minority not to sue, is really the crux of this case. If the majority stockholders have this power, there would be much to be said for defendants' argument that in case of a disqualified or non-functioning

board, the stockholders should decide the matter. Cf. *du Pont v. du Pont, D.C.,* 242 *F.* 98, 137.

But a decision not to press a claim for alleged fraud committed by the directors means, in effect, that the wrong cannot be remedied. It is conceded that the wrong cannot be ratified by the majority stockholders, but it is said that refusal to sue is a different thing from ratification. Strictly speaking, this is true, but the practical result is the same. To construe Rule 23(b) as making necessary a submission of the matter to stockholders, because the stockholders have the power to prevent the enforcement of the claim, is to import into our law a procedure that would inevitably have the effect of seriously imparing the minority stockholder's now existing right to seek redress for frauds committed by directors of the corporation. This right he has always had under the Delaware law and practice. The policy of the General Corporation law for many years has been to grant to the directors, and to the majority stockholders in certain matters, very broad powers to determine corporate management and policy. But, correlatively, the policy of our courts has always been to hold the directors and the majority stockholders to strict accountability for any breach of good faith in the exercise of these powers, and to permit any minority stockholder to seek redress in equity on behalf of the corporation for wrongs committed by the directors or by the majority stockholders. We cannot believe that Rule 23(b) was intended to import into our law and procedure a radical change of this judicial policy.

It is quite true, as defendants say, that no Delaware case has ever passed upon the point, that is, whether an effort to obtain stockholder action is required. It has never been squarely raised. But over a long period of years, in many minority stockholders' suits, no defendant has apparently ever suggested the point. This, we think, is quite significant. The settled practice in Delaware has been that demand upon and refusal by the directors is sufficient, or, if the directors are disqualified to give redress, demand would futile and is excused. Cf. *Sohland v. Baker,* 15 *Del.Ch.* 431, 442, 141 *A.* 277, 282, 58 *A.L.R.* 693. In that case demand had been made on the directors

to bring suit, but no demand had been made on stockholders. Chancellor Harrington said:

> "The corporation, having refused to institute proceedings, the only way that its rights could be brought before the court was by a bill filed by a stockholder. That the complainant, for the prevention of injustice, therefore, had the right to file the bill in the court below, seems clear."

Although the Chancellor cited and quoted from *Hawes v. City of Oakland, infra,* the case announcing the federal rule requiring stockholder demand, he made no mention of any such requirement under Delaware law.

[2] We are aware that there is high authority in support of defendants' contention. See *S. Solomont & Sons Trust, Inc., v. New England Theatres Operating Corp.,* 326 *Mass.* 99, 93 *N.E.* 2d 241, holding that a majority of disinterested stockholders may in good faith determine that a cause of action for fraud against the directors shall not be enforced. There is also high authority for the view that we take, namely, that a cause of action for alleged fraud committed by the directors may be maintained by a minority stockholder without demand upon the stockholders collectively. *Continental Securities Co. v. Belmont,* 206 *N.Y.* 7, 99 *N.E.* 138, 51 *L.R.A.,N.S.,* 112 and note.

Now, we observe that neither in the Massachusetts case nor in the New York case was any rule of court involved. The courts treated the question as one of substantive law. For comment on the Massachusetts rule as one of substantive law, see *Pomerantz v. Clark, D.C.,* 101 *F.Supp.* 341, 343. In the Continental case, the New York Court of Appeals pointed out the difference between the power of the stockholders to ratify acts merely voidable and the lack of their power to ratify acts unlawful or against public policy. We think it clear that so far as any substantive question of law is involved the Delaware law is similar to that of New York. See *Keenan v. Eshleman* and *Loft, Inc., v. Guth, supra* (fraud cannot be ratified by the majority) ; *Blish v. Thompson Automatic Arms Corp.,* 30 *Del.Ch.* 538, 64 *A.2d*

581, and *Kerbs v. California Eastern Airways, Inc.,* 33 *Del.Ch.* 69, 90 *A.2d* 652, 34 *A.L.R.2d* 839 (lack of authority may be cured by stockholder action).

If, therefore, the rule were to be interpreted as defendants contend, i. e., if it contemplates that the decision to sue or not to sue in a case like this is a decision for the stockholders to make if the directors are disqualified, a serious question would arise whether the rule attempts to change substantive law. Since it could not legally have that effect, a construction leading to that conclusion should be avoided. The rule must be harmonized with substantive law.

The defendants say that it is unnecessary in this case to decide the legal effect of the action of the majority stockholders in determining that as a matter of policy no suit shall be brought. Regardless of the effect of such a determination, they say, the rule requires that they pass upon the matter because only a question of procedure is involved. One may again ask, why should a procedure be declared "necessary" if it serves no useful purpose? And how can we determine whether or not it serves a useful purpose unless we ask what results it leads to?

Defendants lay great stress upon the federal cases construing this rule. Our rule, they say, was copied (with certain omissions) from the comparable federal rule 23(b) of the Federal Rules of Civil Procedure, 28 *U.S.C.A.* This is certainly true. Hence, it is said that the construction placed upon the rule by the federal courts should be followed in our courts.

This brings us to a consideration of the authorities discussing or construing the federal rule.

For the history and background of the rule, see 3 *Moore's Federal Practice,* pp. 3489 ff. Originally Equity Rule 94 (later Equity Rule 27), it derives from the decision in *Hawes v. City of Oakland,* 104

*U.S.* 450, 26 *L.Ed.* 827, holding that a minority stockholder must seek action by the stockholders "if necessary". The case does not undertake to decide under what circumstances such demand is necessary. We note that it did not involve any charge of fraud or wrongful personal profit against the directors.

The decision in *United Copper Securities Co. v. Amalgamated Copper Co.,* 244 *U.S.* 261, 37 *S.Ct.* 509, 510, 61 *L.Ed.* 1119 contains language purporting to define the circumstances under which application to the stockholders is excused. The case involves no charge of fraud against the directors. Indicating that "as a rule" application should be made to the stockholders, Mr. Justice Brandeis added:

> "* * * unless it appears that there was no opportunity for such application, that such application would be futile (as where the wrong-doers control the corporation), or that the delay involved would defeat recovery."

Defendants treat this language as a definitive catalogue of all possible cases in which demand on stockholders is excused. We doubt that it was so intended. In the dissenting opinion of Mr. Justice Stone in *Rogers v. Guaranty Trust Co.,* 288 *U.S.* 123, 53 *S.Ct.* 295, 302, 77 *L.Ed.* 652, concurred in by Mr. Justice Brandeis, it is said:

> "The directors, having failed to comply with petitioner's reasonable demand that they exercise their authority to bring this suit in the name of the corporation, petitioner was not required by general equitable principles or by Equity Rule 27 to appeal to the stockholders before bringing it, as the action complained of here was not one which the stockholders could ratify."

We note also that in the recent case of *Smith v. Sperling,* 354 *U.S.* 91, 77 *S.Ct.* 1112, 1114, 1 *L.Ed.2d* 1205, involving a charge of fraudulent waste of assets by directors, the complaint averred only that "demand on the directors would have been futile." In a footnote to the opinion it is said: "The bill therefore meets the requirements of Rule 23(b) of the Rules of Civil Procedure.

When we turn to the decisions of the lower federal courts, we find that they are far from harmonious. We shall not attempt to analyze all of them; illustrative examples will serve our purpose.

The following cases are relied on by the defendants:

In *Haffer v. Voit*, 6 *Cir.*, 219 *F.2d* 704, failure to seek action from the stockholders was held not excused by reason of the delay and expense in circularizing stockholders widely scattered. No charge of fraud was involved, the complaint concerning only unauthorized revision of the terms of a stock option.

*Watts v. Vanderbilt*, 2 *Cir.*, 45 *F.2d* 968, involved a charge of fraud. The board of directors had not functioned for five years. This was held not to excuse failure to attempt to obtain action by the stockholders.

*Abraham v. Parkins*, *D.C.W.D.Pa.*, 36 *F.Supp.* 238, involved a charge of fraud against the directors. Failure to seek action from the stockholders was held fatal. It was said that although the majority stockholders could not ratify the fraud, yet they might supplant the directors and cause the corporation to sue.

*Varanelli v. Wood*, *D.C.S.D.N.Y.*, 9 *F.R.D.* 61, involved a charge of waste of assets. No excuse for failure to demand action by the stockholders was alleged This was held without discussion to be fatal, on the authority of *Hawes v. City of Oakland, supra*, and other cases.

On the other hand, several federal decisions announce a contrary rule.

*Steinberg v. Adams*, *D.C.S.D.N.Y.*, 90 *F.Supp.* 604, involved a charge of illegal use of corporate funds. Noting that the wrong complained of could not be ratified by the majority stockholders, the court held that demand on stockholders for action was unnecessary.

*Steinberg v. Hardy, D.C.Conn., 90 F.Supp.* 167, involved a charge of fraud committed upon a Delaware corporation. The court held that Connecticut law must determine whether remedial action by stockholders was necessary, and that Connecticut law would follow Delaware law on the point in the absence of a Connecticut decision. Citing was required by Delaware. The case was decided in 1950, but our *Sohland v. Baker, supra,* the court held that no demand on stockholders was required by Delaware. The case was decided in 1950, but our Chancery Rule 23(b) was not referred to.

To somewhat the same effect were the holdings in *Carruthers v. Jack Waite Mining Co., D.C.S.D.N.Y.,* 14 *F.R.D.* 475, and *Toebelman v. Missouri-Kansas Pipe Line Co., D.C.Del.,* 41 *F. Supp.* 334.

In *Berg v. Cincinnati N. & C. Ry. Co., D.C.E.D.Ky.,* 56 *F.Supp.* 842, demand upon stockholders was held unnecessary when the stockholders were so numerous that demand would be impracticable.

We do not attempt an exhaustive analysis of all the cases cited to us. It is clear that the federal decisions are far from harmonious in construing the federal rule. They present no serious obstacle to a reasonable interpretation of our rule by this Court consonant with Delaware law and the practice of many years.

Observations of two text-writers may be added. In 3 *Moore's Federal Practice,* p. 3528, it is said:

> "The Rule provides that a demand is also to be made upon the shareholders, prior to suit, 'if necessary'. This reservation is inserted since a demand upon the shareholders, unlike the demand upon the directors, is intertwined with the substantive law of corporations dealing with the power of the shareholders to ratify 'fraud'."

The implications of the author's comment is that demand on stockholders is unnecessary in cases involving charges of fraud.

In *Ballentine on Corporations,* § 146, p. 346, the author comments:

> "An application to the shareholders and the calling of a shareholders' meeting seems an exceedingly unreasonable requirement. It erects a needless barrier to legitimate shareholders' suits which are expensive and burdensome at best. It goes back to the old case of *Foss v. Harbottle* in which by a peculiar charter, the directors were made subject to the control of the shareholders in general meeting, and such meeting had power to originate legal proceedings as well as to confirm voidable transactions of the directors if it saw fit. Ordinarily, however, the shareholders in meeting assembled cannot give orders to the directors, control their discretion, or authorize or forbid suits. A campaign to elect other directors would ordinarily involve fatal obstacles and delay. The only possible sense or utility of such a requirement is in cases where a majority might have a discretion in good faith to ratify some honest but voidable transaction."

We are cited to only one state decision construing an equity rule similar to ours. *Escoett v. Aldecross Country Club,* 16 *N.J.* 438, 109 *A.2d* 277, 283.

The Supreme Court of New Jersey held that the circumstances presented excused demand upon the stockholders, but in so holding considered the history of the rule in the federal system, the federal decisions construing it, and the background of its adoption by the New Jersey Supreme Court. The Court said:

> "And we do not read into the rule any blanket exemption in situations where the wrongs complained of are not subject to formal ratification by the stockholders; even there the stockholders may, before instituting his action, be profitably expected to call upon the general body of stockholders for support which may be in the form of internal corporate action or in joinder in his court action."

Referring to the background of the adoption of the rule in New Jersey in 1948, the Court said:

> "The numerous stockholders' derivative actions in our State gave rise to demands that greater restrictions be imposed upon their maintenance. In 1945 the Legislature made provisions for the stockholder's posting of security for reasonable expenses (R.S. 14:3—15, N.J.S.A.) as a measure of '"protection for corporations and their officers and directors, against 'strike suits.'"'"

Delaware has never adopted such a statute.

With deference to the high court of our sister State of New Jersey, we are constrained, for the reasons first set forth above, to differ with its view that anything substantial can be accomplished by a demand upon stockholders in a case in which fraud is charged. Such a demand would be, in our opinion a futile gesture.

We hold that if a minority stockholders' complaint is based upon an alleged wrong committed by the directors against the corporation, of such a nature as to be beyond ratification by a majority of the stockholders, it is not necessary to allege or prove an effort to obtain action by the stockholders to redress the wrong.

The question may be asked: In what circumstances is such demand necessary? Obviously the rule contemplates that in some cases a demand is necessary; otherwise, it would have not been adopted.

We are not called upon in this case to attempt to enumerate the various circumstances in which demand on stockholders is excused; and likewise we do not undertake to enumerate all the cases in which demand is necessary. It seems clear that one instance of

necessary demand is a case involving only an irregularity or lack of authority in directorate action, e. g., the Blish and Kerbs cases, above cited. Cf. *Continental Securities Co. v. Belmont, supra;* and see the remarks of Professor Ballantine quoted above.

The phrase "if necessary" is thus, we think susceptible of a reasonable construction that comports with Delaware law and practice.

We are accordingly compelled to disagree with the holding of the Vice Chancellor that the bill should be dismissed as to all the defendants for failure to comply with Rule 23(b).

Defendants advance another contention. Even if the rule is inapplicable, they say, yet the dismissal of the complaint must be affirmed as to four of the individual defendants, Emery, Oberfell, Dimit and Rice, who ceased to be directors more than three years before the suit was brought. It is said that the only relief sought against them is legal in its nature, i. e., monetary damages, and that the suit is one within the concurrent jurisdiction of equity, and that in such a case equity, in applying the doctrine of laches, will apply by analogy the statute of limitations at law.

This point was raised and argued below. Naturally, the Vice Chancellor did not reach it. It is renewed here, on the ground that if the result as to these four defendants was correct, the judgment below will be affirmed as to them, notwithstanding that it was founded on erroneous reasoning. *Maurer v. International Re-Insurance Corp.,* 32 *Del.Ch.* 447, 86 *A.2d* 360, 365.

The question of the application in equity of the statute of limitations applicable to actions at law has been often considered in our decisions. *Perkins v. Cartmell's Admr.,* 4 *Har.* 270; *Dodd v. Wilson,* 4 *Del.Ch.* 399; *Gootee v. Riggin,* 12 *Del.Ch.* 91, 107 *A.* 452; *Cochran v. F. H. Smith Co.,* 20 *Del.Ch.* 159, 174 *A.* 119; *Bush v. Hillman*

*Land Co.,* 22 *Del.Ch.* 374, 2 *A.2d* 133; *Bovay v. H. M. Byllesby & Co.,* 27 *Del.Ch.* 381, 38 *A.2d* 808, 174 *A.L.R.* 1201; *Glassberg v. Boyd,* 35 *Del.Ch.* 293, 116 *A.2d* 711.

Plaintiff says that the Byllesby case is applicable and all the directors here are to be treated in equity as express trustees, without the benefit of the statute of limitations; defendants say that the rule of the other cases is applicable to the case of the four directors mentioned.

Of course, which of the two doctrines should be applied depends on the facts.

When we turn to the complaint to learn with what specific wrong-doing these four directors are charged, we are met with ambiguity.

The complaint charges a series of improper dealings between Phillips and the defendant Ada Oil Company for the enrichment of Ada, and, through Ada of the defendant Kenneth S. Adams, Jr., president of Phillips. This was done, it is alleged, as a result of a conspiracy or common scheme between Kenneth S. Adams, former president of Phillips and now chairman of the board of directors, and Kenneth S. Adams, Jr.

As to the other directors the complaint charges:

"14. Upon information and belief that said acts of said defendant Kenneth S. Adams were conceived and done faithlessly, and in violation of law and of his trust and duty to defendant Phillips and its stockholders, and in concert with defendant Kenneth S. Adams, Jr., and defendant Ada, and in furtherance of a conspiracy made and participated in by said defendants to achieve the aims and objectives aforesaid, and the said defendants participated actively in furthering, sponsoring, assisting and consummating the said acts of defendant Phillips with regard to defendant Ada.

"15. Upon information and belief the individual defendants herein, other than defendants Kenneth S. Adams and Kenneth S. Adams, Jr., were under the domination of defendant Kenneth S. Adams, and at all times knew of the foregoing, and ratified and approved said wrongful, wilful and illegal acts, omissions and other matters complained of herein.

"16. That by reason of the aforesaid acts, conduct and behavior of said defendants, which were illegal, fraudulent, wasteful and improper, defendant Phillips has suffered loss of property, depletion of its oil reserves, and loss of profits and damage to its sales, production, business, good will, reputation and prestige."

These allegations impress us as vague. They leave uncertain the extent to which the directors, other than the two Adamses, are charged with profiting by or participating in the alleged fraud.

The prayers for relief are also in very general terms, some asking equitable relief and some legal relief.

A motion of Phillips and the defendant directors for more specific allegations, directed to all or some of the paragraphs of the complaint charging fraud and conspiracy, is pending and undetermined. Until precise facts shall have been developed, by pleading or proof, showing the precise nature of the wrongs charged against these four directors, it is neither feasible nor desirable for this Court to deal with the question of the application of the statute of limitations. Any attempt to do so would involve us in conjectural interpretations of the complaint.

We shall accordingly leave the question open.

For the reasons above stated, the judgment below must be reversed, without prejudice to the four defendants Emery, Oberfell, Dimit and Rice, to renew below at an appropriate time the motion to dismiss above referred to.

The cause is remanded to the Court of Chancery for New Castle County, with instructions to vacate the judgment of October 8, 1957, and to take such further proceedings as may not be inconsistent with this opinion.

*On Petition for Reargument.*

Counsel for defendants have called our attention to two factual errors in the opinion filed in this case. On pages 2 and 3 of the mimeographed copy of the opinion we said:

> "Plaintiff is a stockholder of the defendant Phillips Petroleum Company. She brought an action to redress alleged frauds and wrongs committed by the defendant directors upon the corporation. They concern dealings between Phillips and defendant Ada Oil Company, in which one of the defendant directors is alleged to have a majority stock interest."

This statement with respect to the connection of Kenneth S. Adams, Jr. and the defendant Phillips Petroleum Company is erroneous. Accordingly, the opinion is amended by striking out the above quoted paragraph and inserting in lieu thereof the following paragraph:

> "Plaintiff is a stockholder of the defendant Phillips Petroleum Company. She brought an action to redress alleged frauds and wrongs committed by the defendant directors upon the corporation. They concern dealings between Phillips and defendant Ada Oil Company. Kenneth S. Adams, Jr. is the President and majority stockholder of Ada. He is the son of the defendant Kenneth S. Adams, formerly President and now Chairman of the Board of Phillips."

This error recurs on page 20 of the opinion. The fourth paragraph of that page is amended by striking out from the fourth line thereof the phrase "president of Phillips".

Counsel also called our attention to a second error on pages 4 and 5 of the opinion where we said that the Vice Chancellor did not comment on the Chancellor's opinion in *Campbell v. Loew's Inc.* Accordingly, the opinion is amended by striking from pages 4 and 5 the following sentence:

> "His opinion was filed shortly before the date of the decision of the Vice Chancellor in the instant case, and had, perhaps, not been brought to the latter's attention, since the opinion below does not comment upon it."

The Court has carefully considered the petition for reargument on the merits and finds no reason to change the views on the merits expressed in the opinion filed April 15, 1958.

The petition for reargument is accordingly denied.