Richard MORALES, Plaintiff,

v.

MYLAN LABORATORIES, INC. and George W. Wyckoff, Jr., Defendants.

Civ. A. No. 76–799.

United States District Court,
W. D. Pennsylvania.

Jan. 13, 1978.

David Lopez, New York City, Wiley A. Bucey, Jr., Pittsburgh, Pa., for plaintiff.

David P. Langlois, New York City, David A. Murdoch, Richard T. Wentley, Pittsburgh, Pa., for defendants.

MEMORANDUM OPINION

COHILL, District Judge.

On January 19, 1976, in the United States District Court for the Southern District of New York, plaintiff, Richard Morales, a holder of common stock of Mylan Laboratories, Inc. ("Mylan"), brought suit against Mylan and George W. Wyckoff, Jr. (now deceased), who was one of Mylan's directors, to recover for the benefit of Mylan short-swing profits allegedly realized by Mr. Wyckoff in contravention of § 16(b) of the Securities Exchange Act of 1934, *as amended,* 15 U.S.C. § 78p(b) (the "Act"). According to the plaintiff, Mr. Wyckoff sold

5000 shares of Mylan in a private sale on September 4, 1973 and within six months thereafter purchased 5000 shares of Mylan, thereby realizing a short-swing profit to which Mylan is entitled under the Act.

Mellon Bank, N.A., as co-executor of Mr. Wyckoff's estate, timely filed a motion to dismiss. Thereafter, pursuant to stipulation between the parties, the action was transferred to this court, the then pending motion to dismiss remaining as part of the transfer record. In addition, plaintiff has moved for summary judgment.

Mellon Bank specifies four grounds for the motion to dismiss:

(1) as to Wyckoff, venue was improper in the Southern District of New York under Fed.R.Civ.P. 12(b)(3), 28 U.S.C. § 1391(b) and § 27 of the Act;

(2) as to Mellon Bank as co-executor of Wyckoff's estate, venue was improper in the Southern District of New York under the National Bank Act, 12 U.S.C. § 94;

(3) the complaint fails to state a claim upon which relief can be granted, which mandates dismissal pursuant to Fed.R.Civ.P. 12(b)(6); and

(4) under Fed.R.Civ.P. 17(b), the co-executors of the Wyckoff Estate do not have the capacity to be sued in the Southern District of New York.

▮ Assuming *arguendo* that Mellon Bank's contentions (1), (2) and (4) above are correct, they pose no problem to a transfer here under 28 U.S.C. § 1406(a) due to improper venue in New York, providing the case could have been brought in this district, which Mellon Bank does not dispute. It is well-settled that a transfer under § 1406(a) may be made "however wrong the plaintiff may have been in filing his case as to venue, whether the court in which it was filed had personal jurisdiction over the defendants or not." *Goldlawr v. Heiman,* 369 U.S. 463, 466, 82 S.Ct. 913, 916, 8 L.Ed.2d 39 (1962). *See also Burnett v. New York Cent. R. Co.,* 380 U.S. 424, 85 S.Ct. 1050, 13 L.Ed.2d 941 (1965). Because the case has been transferred, as the parties stipulated, Mellon Bank's objections as to improper venue and lack of personal jurisdiction have been obviated.

Mellon Bank's third contention for dismissal pursuant to Fed.R.Civ.P. 12(b)(6) that the complaint fails to state a claim upon which relief can be granted is based on two grounds. The first averment is that Mr. Wyckoff made no sale of Mylan stock within six months of the undisputed purchases to constitute a short-swing profit. This is clearly defeated by the SEC Form 4 report, the Mylan Proxy Questionnaire and the Mylan Proxy Statement reflecting such a sale, which plaintiff has presented by affidavit.

▮ The second basis for the rule 12(b)(6) contention, that plaintiff, in contravention of the Act, instituted suit before 60 days after requesting Mylan to bring suit, poses only slightly more difficulty. We note that the profiting insider has no standing to raise this objection. *Schur v. Salzman,* 365 F.Supp. 725, 732–33 & n.30 (S.D.N.Y.1973); *Benisch v. Cameron,* 81 F.Supp. 882, 885 (S.D.N.Y.1948); *Grossman v. Young,* 72 F.Supp. 375, 380 (S.D.N.Y.1947); 11A Business Organizations—Securities Regulation, E. Gadsby, The Federal Securities Exchange Act of 1934, § 8.02[1], at 8–60 (1977) [hereinafter cited as Gadsby]. In this regard, it is important to note that defendant Mylan did not file a motion to dismiss. In fact, in a statement of its position filed January 5, 1977, Mylan indicated that it does not intend "to assume an active role with respect to any Motion to Dismiss or Motion for Summary Judgment heretofore filed in this action." Since Mylan has not objected to plaintiff's failure to wait the required 60 days before instituting suit, we conclude that the Wyckoff Estate cannot raise that objection. *Heit v. Gulf & Western Industries, Inc.,* 321 F.Supp. 921 (D.Del. 1971), cited by Mellon Bank, in which the defendant corporation also filed a motion to dismiss, is distinguishable.

In addition, plaintiff had ample justification to file suit before the end of the 60 day period. § 16(b) of the Act provides that "no such suit shall be brought more than two

years after the date such profit was realized." Although we have discovered no cases on point, Professor Loss has stated: "Presumably the statute of limitations period begins to run from the date of the last transaction which is used in the plaintiff's computation of profit." L. Loss, II Securities Regulation 1056 (2d ed. 1961). He concludes that recovery should be allowed even where one transaction is inside the two-year period and one is outside it. *See also* Gadsby § 8.02[1], at 8–60. Within six months after the alleged sale of 5000 shares of Mylan stock on September 4, 1973, Mr. Wyckoff purchased Mylan stock on nine separate dates. In accordance with the "lowest price in, highest price out" rule of *Smolowe v. Delendo,* 136 F.2d 231, 239 (2d Cir.), *cert. denied,* 320 U.S. 751, 64 S.Ct. 56, 88 L.Ed. 446 (1943), the purchases at the lowest prices to be used in computing the short-swing profit occurred on October 3 and 4 and December 27, 1973 and on January 2 and 28, 1974. Thus, the two-year statute of limitations arguably began to run on January 28, 1974. Plaintiff brought suit on January 19, 1976, only 13 days after his demand on Mylan to recover the alleged short-swing profit but 10 days before Mylan's cause of action apparently would have been barred. Let us assume that the statute of limitations began to run on March 4, 1974, which was six months after the alleged September 4, 1973 sale. Even with that assumption, plaintiff could not defer bringing an action until March 6, 1976 (60 days after his demand on Mylan), because the suit would have been barred on March 4, 1976. It is well-settled that for good reason a stockholder need not wait 60 days following a demand on a corporation to bring suit to recover short-swing profits. *Morales v. McIntyre Porcupine Mines, Ltd.,* 1972–73 CCH Federal Securities Law Reports ¶ 93,636 (S.D.N.Y.1972); *Benisch v. Cameron, supra; Grossman v. Young, supra*; Gadsby at 8–61. Because Mylan's cause of action apparently would have been barred on January 28, 1976, which was 22 days after plaintiff's demand on Mylan, we conclude that plaintiff had ample justification for not waiting until the end of the 60 day period.

For the above reasons, we deny the motion to dismiss.

█ As for plaintiff's motion for summary judgment pursuant to Fed.R.Civ.P. 56, Mellon Bank's asserted inability to find personal records of the alleged September 4, 1973 sale raises a genuine issue as to the material fact of such sale. It is not for the court in considering a motion for summary judgment to weigh the strength of Mellon Bank's assertion in this regard against the undisputed existence of the SEC Form 4, the Mylan Proxy Questionnaire and the Mylan Proxy Statement, all of which report the September 4 sale. We accordingly deny plaintiff's motion for summary judgment.

An appropriate order will be entered.