David COLAN, Plaintiff,

v.

MONUMENTAL CORPORATION, Kaufman and Broad, Inc., Sun Life Group, Inc., and Sun Life Insurance Company of America, Defendants.

No. 81 C 2695.

United States District Court,
N. D. Illinois, E. D.

Oct. 5, 1981.

David Colan, pro se.

David Apter, Kantor & Apter, Ltd., Donald Harris, Jenner & Block, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

Plaintiff David Colan instituted this derivative action on behalf of Monumental Corporation ("Monumental") against defendants Kaufman and Broad, Inc., Sun Life Group, Inc., and Sun Life Insurance Co. of America ("the K & B Defendants") pursuant to Section 16(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78p(b) ["Section 16(b)"]. This suit seeks recovery of "short-swing profits" which plaintiff alleges were realized through a series of purchases and sales of securities within a six-month period during which defendants beneficially owned more than ten percent of Monumental common stock.

This matter is presently before the Court on the K & B Defendants' motion to dismiss the complaint on the grounds that (1) a prior shareholder derivative action filed against these defendants is *res judicata* with regard to the instant claims and (2) plaintiff failed to make a proper demand on Monumental prior to bringing this action as required by Rule 23.1 of the Federal Rules of Civil Procedure and Section 16(b). For the reasons set forth herein, the motion is denied in its entirety.[1]

## RES JUDICATA

The K & B Defendants contend that the doctrine of *res judicata* bars this action by virtue of the dismissal on the merits of a prior derivative suit in *Coran v. Kaufman & Broad, Inc.*, 79 Civ. 4958 (S.D.N.Y., March 21, 1980) (the "First Derivative Action"). There is no dispute here that the First Derivative Action was brought by a different shareholder of Monumental against the same defendants, alleging the same wrong, and involving the same factual context as the current suit. The plaintiff herein argues that *res judicata* should not be applied in the instant case because the plaintiff in the First Derivative Action failed "diligently to prosecute" the corporation's claim as required by Section 16(b).

In general, the doctrine of *res judicata* provides that a valid final judgment rendered on the merits bars absolutely a subsequent action between the same parties, or those in privity with them, upon the same claim. *Res judicata* binds the parties both as to issues which were actually litigated and decided in the initial action as well as those issues which could have been, but were not, raised and resolved. *E. g., Saylor v. Lindsley*, 391 F.2d 965, 968 (2d Cir. 1968). As such, the doctrine serves important functions of judicial economy and of fairness to defendants. Parties are given one chance to fully litigate a claim. After that claim has been decided, *res judicata* relieves the courts of the necessity of hearing the same dispute once again. The rule promotes finality and stability of judgments, and protects defendants from vexatious lawsuits and multiple recovery. These virtues outweigh the danger that, occasionally, the operation of the doctrine will result in injustice to a particular plaintiff. *See generally,* Note, *Res Judicata in the Derivative Action: Adequacy of Representation and the Inadequate Plaintiff*, 71 Mich.L.Rev. 1042, 1058 (1973).

In the special context of derivative suits, the doctrine of *res judicata* has both compelling applications and limitations. The doctrine protects a corporate defendant from exposure to a series of suits by different shareholders all alleging the same wrong. Successive suits would result in a number of detriments to the corporation, including loss of reputation and good will, financial hardship from constant litigation, erosion of company morale, and disruption and inconvenience for directors and officers and other employees who must divert their

---

[1]. We are appreciative that the legal issues we resolve herein contrary to the K & B Defendants are indeed close. Thus, the Court notes, without deciding at this time, that this order might be appropriate for interlocutory appeal pursuant to 28 U.S.C. § 1292(b).

attentions from the normal conduct of business to the business of defending against lawsuits. Note, *Res Judicata in the Derivative Action, supra* at 1058.

*Res Judicata* nonetheless poses particular dangers in the derivative suit context. Because the corporation, and not the shareholder-plaintiff, is the real party in interest in a derivative action, *Ross v. Bernhard*, 396 U.S. 531, 538, 90 S.Ct. 733, 738, 24 L.Ed.2d 729 (1970), an adjudication on the merits in one shareholder derivative suit will operate to bind all shareholders to the judgment in that case. *See, e. g., Cramer v. General Telephone & Electronics Corp.*, 582 F.2d 259, 267 (3d Cir. 1978). Since the first shareholder whose claim becomes final binds the rest, there is a special danger that a plaintiff suing derivatively will not, as Rule 23.1 requires, "fairly and adequately represent the interests of the shareholders or members similarly situated in enforcing the right of the corporation or association," thus losing for the corporation forever the opportunity for a more favorable disposition of its claim. To protect the corporation against the loss of a valid claim by a plaintiff who is incompetent, in collusion with the wrongdoers, or who simply grows "faint-hearted" at the prospect of continued litigation, Rule 23.1 requires that a derivative action not be "dismissed or compromised without the approval of the court, and notice of the proposed dismissal or compromise shall be given to shareholders in such manner as the court directs." Fed.R. Civ.P. 23.1. Thus, the court and other shareholders are given the opportunity to supervise to some extent the first plaintiff's conduct of the suit before the settlement or judgment becomes final and binding on the corporation.

The importance of the notice requirement in lessening the special danger posed by the application of *res judicata* in the derivative context has been recognized by a number of courts. As the Second Circuit wrote in *Papilsky v. Berndt*, 466 F.2d 251 (2d Cir. 1972), *cert. denied*, 409 U.S. 1077, 93 S.Ct. 689, 34 L.Ed.2d 665 (1972),

... caution [in according *res judicata* effect to a prior action in which the present plaintiff-shareholder was absent] is warranted in the context of derivative actions in view of the fact that the plaintiff-shareholder is affecting a right which belongs to the corporation. To discourage the plaintiff from sacrificing the corporate cause of action to further his own self-interest, notice to nonparty stockholders of proposed dismissals is required in a variety of situations. Where notice is a prerequisite to dismissal of a derivative action, a judgment of dismissal will not be accorded *res judicata* effect unless such notice was given.

*Id.* at 257 (citations omitted).

As the *Papilsky* court noted, courts have required notice of proposed dismissals in a variety of situations where the corporate claim could otherwise be lost through the operation of *res judicata*. An examination of some of these precedents is helpful in evaluating the K & B Defendants' argument for the application of *res judicata* in the instant case. In *Certain-Teed Products Corp. v. Topping*, 171 F.2d 241 (2d Cir. 1948), the notice requirement of Rule 23(c) (now Rule 23.1) was held applicable where the plaintiff-shareholder consented to the entry of summary judgment against him. Similarly, in *Brendle v. Smith*, 7 F.R.D. 119 (S.D.N.Y.1946), the plaintiff-shareholder stipulated to the dismissal of his suit without costs and did not oppose the defendant's motion for summary judgment. The court held that the notice requirement of Rule 23(c) applied. *Saylor v. Lindsley*, 391 F.2d 965 (2d Cir. 1968) (failure to answer interrogatories) and *Papilsky, supra* (failure to post bond-for-cost) were both cases in which the court explicitly refused to accord *res judicata* effect to an involuntary dismissal of a plaintiff-shareholder's derivative action without notice to nonparty shareholders, even though Rule 41(b) dismissals are expressly said to operate as adjudications on the merits.[2] Fed.R.Civ.P. 41(b). Finally,

---

**2.** Except where the dismissal is for lack of jurisdiction, for improper venue, for failure to join a party under Rule 19, or where the court in its order specifies that the dismissal is not to

this Court notes that in *Cramer v. General Telephone & Electronics Corp., supra,* cited by the K & B Defendants in support of the application of *res judicata,* the Third Circuit interpreted the notice requirement of Rule 23.1 as extending to voluntary dismissals under Rule 41(a), and held that nonparty shareholders could not be bound by the judgment in a derivative action voluntarily dismissed without notice to other shareholders.

■ Read together, these cases support a general rule, endorsed by Professor Moore, that notice should be a precondition to the application of *res judicata* following any dismissal of a derivative suit: "unless the dismissal can be analogized to a dismissal for lack of jurisdiction, or to dismissal on the merits with adequate representation, then no exception should be recognized and notice should be required." J. Moore, Federal Practice ¶ 23.1.24[2] at 23.1–131.

■ Applying these principles and precedents to the facts of the instant case, it is apparent that the policies supporting the denial of *res judicata* effect to a prior derivative action should govern here as well. The First Derivative Action was dismissed on defendants' motion pursuant to Fed.R. Civ.P. 12(b)(6). In its memorandum granting the defendants' motion, the district court relied on the responsive affidavit filed by the plaintiff's attorney in which the attorney concedes that the complaint was mistaken as to the critical fact of whether the K & B Defendants were ten percent shareholders at the relevant times. *Coran*

*v. Kaufman & Broad, Inc.,* 79 Civ. 4958 (S.D.N.Y. March 21, 1980).[3] The affidavit concedes that, based on information contained in the defendants' motion to dismiss and on Coran's attorney's subsequent research, at no time during a six-month period did the defendants make a purchase and sale or sale and purchase while beneficially owning ten percent of Monumental common stock. In concluding, Coran's attorney expressed his belief that "the facts overtly support defendants' application of § 16(b) case law in this action" and that he "knows of no viable defense to the [defendants' motion] and asks that the Court make its determination accordingly." Bronzaft Affidavit at 7.

■ Irrespective of the merits of the underlying complaint, it can hardly be said that the plaintiff's prosecution of the corporation's claim in the First Derivative Action led to the kind of adjudication on the merits after full adversarial presentations by opposing counsel which would guarantee that the validity of the corporation's claim has been fairly determined and would justify binding result. While there is no suggestion made here of fraud or collusion, none is necessary. Because the only substantive filing made by the plaintiff in the First Derivative Action was the affidavit of plaintiff's attorney admitting that he had no case and inviting the Court to act accordingly, the disposition of that case was most closely analogous to a voluntary dismissal or a consent to the entry of summary judgment. Thus, the policies and precedents supporting the require-

operate as an adjudication upon the merits, a dismissal under Rule 41(b) is to operate as an adjudication on the merits. Fed.R.Civ.P. 41(b). In their reply memorandum in further support of their motion to dismiss, the K & B Defendants cite *Kotakis v. Elgin, Joliet & Eastern Ry. Co.,* 520 F.2d 570 (7th Cir. 1975), in support of the application of *res judicata* even where a prior suit has been dismissed for failure to prosecute under Rule 41(b). Since *Kotakis* did not involve a shareholder's derivative suit, the special caution that courts have shown before applying *res judicata* (demonstrated by the quotation from the *Papilsky* opinion, *supra*), was not called for. Hence, *Kotakis* is easily distinguishable from the instant case.

3. Rule 12(b) provides that a 12(b)(6) motion is to be decided on the basis of the pleadings only. When a court considers matters outside of the pleadings, a 12(b)(6) motion is converted into a motion for summary judgment under Rule 56. Fed.R.Civ.P. 12(b). The purpose of this provision is to ensure adequate opportunity for all parties to submit extraneous proofs and affidavits and to avoid unfair surprise. Notes of Advisory Committee on 1946 Amendment to Rule 12. Inasmuch as the plaintiff's attorney in *Coran* invited the court to dismiss the suit, there was no problem of unfair surprise or inadequate opportunity to submit proof to the court before it ruled on defendants' motion.

ment of notice to nonparty shareholders as a precondition to according *res judicata* effect to a dismissal of a derivative suit are applicable here. Since there is nothing in the memoranda submitted by the parties here, or in the Court's order or opinion in the First Derivative Action, to indicate that any notice of that action's dismissal was provided to nonparty shareholders who may have wanted to oppose the defendants' motion and pursue the corporate claim further, this Court holds that the dismissal of the First Derivative Action is not *res judicata* as to this suit. Accordingly, the K & B Defendants' motion to dismiss under Fed.R. Civ.P. 12(b)(6) is denied.[4] It is so ordered.

## ADEQUACY OF DEMAND

■ The K & B Defendants also contend that this action should be dismissed on the grounds that the plaintiff failed to make a proper demand on the directors of Monumental Corporation as required by Fed.R. Civ.P. 23.1 and Section 16(b). In particular, the K & B Defendants assert that the plaintiff's demand was deficient in that, after requesting that the board of directors of Monumental take action to recover short-swing profits from the K & B Defendants and receiving the board's refusal, the plaintiff delayed bringing suit for over a year and made no communication with the directors of Monumental in the interim.

The memoranda submitted by the parties indicate that no genuine dispute of fact exists respecting the steps taken by the plaintiff to secure action by Monumental's directors prior to bringing this action derivatively. In a letter dated March 7, 1980, the plaintiff demanded that the directors of Monumental take action to require the K & B Defendants to "disgorge the short-swing profits pursuant to the purchases and sale of [Monumental] Common Stock between March, 1979, and May, 1979." [Defendants' Exhibit D]. Monumental responded in a

letter dated April 10, 1980, that the matter was litigated in *Coran*, the First Derivative Action, resulting in a judgment that Section 16(b) had not been violated. Thus, Monumental informed the plaintiff that the corporation intended to take no further action in the matter. Some thirteen months later, on May 13, 1981, the plaintiff brought this action. The K & B Defendants now contend that the plaintiff had, at a minimum, an obligation to communicate to Monumental how his suit would differ from the First Derivative Action in order that all intracorporate remedies be exhausted prior to bringing a derivative suit. By failing to specify this information in his letter of March 7, 1980, and subsequently failing to respond to the corporation's refusal to act upon his demand until bringing this action, defendants contend that the plaintiff failed to fully apprise the corporation of the basis of his suit. Thus, it is contended, the corporation was not given every opportunity to sue on its own.

The requirement that a shareholder make a demand on the directors of a corporation prior to suing derivatively serves to prevent shareholders and the courts from interfering in matters normally within the province of a corporation's management. The demand requirement "recognizes the right of the corporate directory to corporate control," *Delaware & Hudson Co. v. Albany & Susquehanna Railroad Co.*, 213 U.S. 435, 447, 29 S.Ct. 540, 543, 53 L.Ed. 862 (1909), and gives the corporation an opportunity to vindicate on its own the rights which the shareholder seeks to uphold derivatively. *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 548, 69 S.Ct. 1221, 1226, 93 L.Ed. 1528 (1949). As this Court recently stated, the demand requirement allows a corporation to

> ... activate intracorporate remedies to address shareholder complaints prior to resorting to judicial intervention. *See*

---

4. Because the parties submitted, and the Court considered matters outside of the pleadings, the Court treated this 12(b)(6) motion to dismiss as a motion for summary judgment pursuant to Rule 56. *See* discussion at n.3 *supra.* Since the exhibits submitted by the parties do not

reveal the absence of any genuine issue of material fact such that the defendants are entitled to judgment as a matter of law, Fed.R. Civ.P. 56(c), as demonstrated by the Court's opinion, the motion is denied.

*generally*, 44 U.Chi.L.Rev. 168 (1976). . . . The dissident shareholder is provided with an opportunity to achieve his goal without incurring the expense of litigation; the directors of the corporation are allowed to occupy their status as managers of the corporation's affairs; the corporation is left to clean its own house, free from judicial entanglements; and the courts are relieved of the burden of prematurely resolving intracorporate disputes. Of course, it is possible, indeed likely, that the corporation will refuse to take the action demanded by the shareholder. The purpose of Rule 23.1, however, is to give the corporation a fair opportunity to act on the demand, short of litigation.

*Mills v. Esmark, Inc.*, 91 F.R.D. 70, at 71–72 (N.D.Ill., 1981).

Section 16(b) of the Securities Exchange Act contains its own demand requirement which permits a shareholder to sue only if the issuer fails or refuses to bring suit within sixty days after request or fails to diligently prosecute the action. 15 U.S.C. § 78p(b). This demand requirement promotes the same policies of judicial economy and deference to corporate managers referred to above. It is apparent that the demand requirements of Rule 23.1 and of Section 16(b) are designed to benefit the corporation and the public interest, not the "insider defendants." Accordingly, a number of cases hold that only the corporation, not a beneficial owner, has standing to object to any deficiency in, or even the total absence of, a plaintiff-shareholder's demand on directors. *Prager v. Sylvestri*, 449 F.Supp. 425, 429 (S.D.N.Y.1978) (failure to

make demand); *Morales v. Mylan Laboratories*, 443 F.Supp. 778, 779 (W.D.Pa.1978) and *Blau v. Ogsbury*, [1952–56] Fed.Sec.L.Rep. (CCH) ¶ 90,635 at 91,931 (S.D.N.Y.1953) (failure to wait 60 days after demand before bringing suit); *Schur v. Salzman*, 365 F.Supp. 725, 732–33 & n.30 (S.D.N.Y.1973) (failure to make new demand on successor board of directors); *accord, Markowitz v. Brody*, 90 F.R.D. 542, 563 n.20 [1981] Fed. Sec.L.Rep. (CCH) ¶ 98,002 at 91,174–75 & n.20 (S.D.N.Y.1981) (demand requirement in action brought under § 36(b) of Investment Company Act benefits investment advisers as well as mutual fund, thus advisers, unlike corporate insiders under § 16(b), have standing to raise deficiencies in plaintiff's demand).

The K & B Defendants contend that *Prager, supra*, is inapplicable here since that case holds only that insider defendants lack standing where the corporation knows of and does not object to the shareholder's suit. In the instant case, the defendants argue that Monumental objected to such a suit as evidenced by its response to plaintiff's demand letter. *Prager* and the other cases cited above, however, are bottomed on the sound principle that "only the part[ies] for whose benefit a defense [to a shareholder derivative action] is intended should be permitted to raise the defense." *Markowitz v. Brody, supra* at 561 *quoting* Note, *Defenses in Shareholders Derivative Suits— Who May Raise Them*, 66 Harv.L.Rev. 342, 346 (1952). Thus, we conclude that the K & B Defendants lack standing to complain of any deficiencies in the demand made by the plaintiff upon Monumental's directors.[5]

---

**5.** While this Court's conclusion that the K & B Defendants lack standing to object to plaintiff's demand obviates our passing on the sufficiency of that demand, it should be noted that there is a tension between the arguments made by the K & B Defendants that on the one hand they should have standing to assert deficiencies in plaintiff's demand because Monumental knew of, but objected to, the plaintiff's suit, while on the other hand asserting that the demand made on Monumental was insufficient to apprise it of the basis of the suit. If the demand was inadequate, then Monumental didn't fully know the basis of the suit, yet it objected anyway. This

fact would suggest that perhaps it was Monumental that should have initiated further communication with the plaintiff following its rejection of his demand, for it was Monumental which stood to gain from pressing a meritorious claim. Perhaps it is this tension which explains why the cases relating to standing to assert demand deficiencies involve non-objecting corporations: if the demand was sufficient to apprise the corporation of the basis of the claim and the corporation rejected the demand, then the demand requirement of § 16(b) had been satisfied. Thus, no defense of insufficient demand was left to be raised.

Accordingly, the K & B Defendants' motion to dismiss under Fed.R.Civ.P. 23.1 is also denied. It is so ordered.

*Schlensky v. Dorsey,* 574 F.2d 131 (3d Cir. 1978), cited by the K & B Defendants for a variety of propositions, is the strongest authority for allowing these defendants standing to raise the issue of plaintiff's demand deficiencies. *Schlensky* involved consolidated derivative actions brought by shareholders of Gulf Oil Corp. on behalf of Gulf and against a number of officers and directors of Gulf or Gulf subsidiaries and against Price Waterhouse, Gulf's former independent certified public accountant and auditor. The suits sought recovery of corporate expenses incurred in connection with unlawful corporate campaign contributions and ensuing investigations, prosecutions, and fines. The district court had granted the motion of defendant Price Waterhouse to be dismissed as a defendant party because of the plaintiff's failure to comply with Rule 23.1. Specifically, Price Waterhouse claimed, and the district court agreed, that the complaint failed to allege efforts to obtain action by Gulf's directors against Price Waterhouse and the reasons for not obtaining such action, or the reason why effort should be excused. The plaintiffs appealed the dismissal of Price Waterhouse as a defendant, arguing *inter alia* that Price Waterhouse lacked standing to raise the defense of noncompliance with the Rule 23.1 demand requirement. The Third Circuit held that the law is

> ... well settled, contrary to the plaintiffs' contention, that defendants other than the corporation whose rights the shareholder plaintiffs are seeking to vindicate may successfully raise the defense of failure to comply with Rule 23.1. (Citations omitted).

*Schlensky v. Dorsey,* 574 F.2d at 142.

Inasmuch as the *Schlensky* opinion (1) provided no reasons for allowing defendants other than the corporation standing to raise the failure of demand defense, (2) cited authorities for this "well settled" rule which do not directly discuss the question, and (3) does not involve the § 16(b) demand requirement as do the "unbroken line of cases," *Markowitz v. Brody, supra* at 91,175 n.20, denying standing to insider defendants, this Court is persuaded that the rule announced in *Schlensky v. Dorsey* should not govern here.